# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------- X

| | |
|---|---|
| LUIS A. VELAZQUEZ, | : |
| Plaintiff, | : Case No. 07-1512 (CCC) |
| -against- | : |
| | Hon. Carmen Consuelo Cerezo |
| RAFAEL PINA, et al., | : |
| Defendants. | : |

------------------------------------------------------- X

## DEFENDANTS' SUR REPLY TO THE RESPONSE OF THE REGISTER OF COPYRIGHTS

Plaintiff Velazquez's latest story about how he supposedly came to own the "Amiga Mia" composition is just another part of the shell-game he is playing with Defendants, the Copyright Office, and this Court. In his July 29, 2009 submission (Dkt. No. 111), Velazquez shamelessly recycles his work-for-hire copyright ownership theory, despite having expressly abandoned that theory over a year ago. As briefly explained below, Velazquez's work-for-hire theory should be rejected not only because the Court expressly relied on his abandonment of that theory, but because it is flatly contradicted by the clear language of the Copyright Act.

All three of Velazquez's complaints allege that artists Vazquez and Nieves created "Amiga Mia" *before* they supposedly assigned the copyright to Velazquez. (Dkt. No. 1 ¶¶ 18-19; Dkt. No. 3 ¶¶ 18-19; Dkt. No. 20 ¶¶ 18-19.) However, Velazquez's original copyright registration named himself as the author and asserted that Vazquez and Nieves had created "Amiga Mia" for him as a work-for-hire (Dkt. No. 1, Ex. 2), despite the fact that a work-for-hire

1

requires either a *pre-existing* written agreement or an ongoing employment relationship (which did not exist here).

After Defendants Vazquez and Nieves (the "Artists") demonstrated that Velazquez's work-for-hire copyright registration was invalid because the Artists created "Amiga Mia" before they supposedly assigned it to Velazquez (*see* Artists' Mot. to Dismiss, Dkt. No. 46 at 5-6), Velazquez recanted, and explained that he had "verified the copyright registration for the song 'Amiga Mia' **and proceeded to correct the same and conform it to the facts of this case.**" (Pl.'s Opp. to Mot. to Dismiss, Dkt. No. 58 at ¶ 2) (emphasis added). In doing so, Velazquez applied for and obtained a supplementary registration from the Copyright Office for "Amiga Mia," naming the Artists as the true authors, and expressly stating that he was the copyright owner by written assignment – rather than by work-for-hire as he claimed in his original registration. (*Id.*, Dkt. No. 58, Ex. 1.)

In denying the Artists' motion to dismiss, the Court expressly relied on Velazquez's representation that he was no longer relying on his illogical work-for-hire theory by "supplement[ing] the copyright information in the registration thereby correcting the errors cited by defendants[.]" (Order dated May 29, 2008, Dkt. No. 62.) Furthermore, in its Request to the Copyright Office, the Court noted that the supposed written assignment "does not meet the definition of a 'work made for hire' found in 17 U.S.C. §101, in that the song had been composed prior to the parties' agreement. It is undisputed that Nieves and Vázquez are the authors/composers of 'Amiga Mía.'" (Request to the Register of Copyrights, dated June 1, 2009, Dkt. No. 107.)

Despite changing his theory of copyright ownership from work-for-hire to written assignment, and despite the fact that both the Copyright Office and this Court relied on that

2

change in theory, Plaintiff now changes tack yet again, claiming that "Amiga Mia" was a form of work-for-hire known as a commissioned work. Plaintiff's recycled theory is fatally flawed and should be rejected.

First, Velazquez is judicially estopped from now arguing that he acquired the "Amiga Mia" copyright by work-for-hire. "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position . . . . . This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Zedner v. United States*, 547 U.S. 489, 504 (2006) (quotations and citations omitted). The purpose of judicial estoppel is "to protect the integrity of the judicial process," and "prevent[] parties from playing fast and loose with the courts[.]" *New Hampshire v. Maine*, 532 U.S. 742, 749-750 (2001) (citations omitted). Judicial estoppel precludes litigants from taking positions that are inconsistent with prior statements to courts, as well as administrative agencies. *See Thomas v. Contoocook Valley School Dist.*, 150 F.3d 31, 44 n.10 (1st Cir. 1998) (recognizing that judicial estoppel applies to positions taken in administrative proceedings)

By amending his copyright registration from work-for-hire to written assignment, Velazquez represented to the Court and the Copyright Office that he was no longer relying on the work-for-hire theory. The Court relied on that representation in denying the Artists' motion to dismiss Velazquez's infringement claims, and the Copyright Office relied on that representation in issuing the supplemental registration. As a result, Velazquez is judicially estopped from now arguing that he acquired the "Amiga Mia" copyright by work-for-hire. Indeed, Velazquez is

3

precisely the sort of "fast and loose" litigant to whom the judicial estoppel doctrine is intended to apply.[1]

Second, Velazquez's work-for-hire theory is undermined by the express provisions of the Copyright Act. Section 101 of the Copyright Act, 17 U.S.C. § 101, provides that a "work made for hire" is either (1) "a work prepared by an employee within the scope of his or her employment" (which is clearly not the case here) or (2) "a work specially ordered or commissioned for use" as part of one of nine specifically enumerated categories. Velazquez recognizes that "Section 101 limits the creation of a work made for hire to nine (9) enumerated categories" but he conveniently omits the fact that those nine specific categories **do not include musical compositions**.[2] Velazquez's intentional omission of that critical fact is yet another example of his disregard for the integrity of the judicial system.

In addition, Velazquez himself recognizes that the Copyright Act requires that "the parties must agree in **a written instrument** that the work shall be considered a 'work made for hire.'" (Dkt. 111 at 3.) It is undisputed that there was no written agreement between Velazquez and the Artists before the Artists composed "Amiga Mia." As a result, the clear and unambiguous language of the Copyright Act precludes Velazquez from claiming that the "Amiga Mia" composition was created as a work made for hire.

---

[1] As the Court will recall, Velazquez cited erroneous and long-since-overturned case law in opposition to Sony/ATV's *in limine* motion. (Dkt. No. 100 at 9-11; Dkt. No. 102, Ex. 1 at 1-3.) Velazquez's repeated misrepresentations and attempts to deceive the Court should not be countenanced.

[2] Those categories are "[1] a contribution to a collective work, [2] as a part of a motion picture or other audiovisual work, [3] as a translation, [4] as a supplementary work, [5] as a compilation, [6] as an instructional text, [7] as a test, [8] as answer material for a test, or [9] as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." 17 U.S.C. § 101. A "supplementary work" is "a work prepared for publication as a secondary adjunct to a work by another author for the purpose of introducing, concluding, illustrating, explaining, revising, commenting upon, or assisting in the use of the other work[.]" *Id.*

4

In sum, Velazquez's recycled and legally unsupportable work-for-hire theory should be rejected. As a result, the issue before the Court is whether the August 22, 2004 document legally transferred the copyright to the "Amiga Mia" composition, or was merely an agreement to provide a specific recording of "Amiga Mia," rather than to transfer the underlying copyright. For all the reasons stated in Universal's and the Artists summary judgment motions, and in the Pre-Trial Order (Dkt. Nos. 73, 74, 93), the Court should find that the August 22, 2004 document did not transfer the underlying copyright to "Amiga Mia," and dismiss Velazquez's claims with prejudice.

Dated: New York, New York
August 3, 2009

ADSUAR MUNIZ GOYCO SEDA & PEREZ OCHOA, P.S.C.

By: S/KATARINA STIPEC
    Katarina Stipec (USDC No. 206611)
    P.O. Box 70294
    San Juan, PR 00936-8294
    Tel.: (787) 76-9000
    Fax: (787) 756-9010

LOEB & LOEB LLP

    Barry I. Slotnick
    Tal E. Dickstein
    345 Park Avenue
    New York, New York 10154-1895
    (212) 407-4000
    *Attorneys for Sony/ATV Discos Music Publishing LLC*